# WHEELING.

STATE *v.* BRAST.

\*(Absent, GREEN, JUDGE.)

Submitted June 7, 1888.—Decided June 27, 1888.

1. GAMING—CONSTRUCTION OF STATUTE—NUISANCE.

   The provision of our statute against gaming contained in Code W. Va., § 4, Ch. 151. is intended to prevent gaming from becoming an annoyance or a nuisance to the public, and not specially to suppress gambling as a vice *per se.*

2. GAMING—EVIDENCE.

   A case in which the facts proved are held insufficient to sustain a verdict of guilty under said statute.

*T. P. Jacobs* for plaintiff in error.

*Attorney-General Alfred Caldwell* for the State.

SNYDER, JUDGE :

At the January term, 1888, of the Circuit Court of Wetzel county, an indictment was found against Amos Brast, charging that in August, 1887, the said "Brast, in the room of Amos Brast, in the Brast House, in the town of New Martinsville, Wetzel county, W. Va., did unlawfully play a game at cards at the time and place aforesaid, and the said Amos Brast's room, as aforesaid, was, at the time aforesaid, a public place," etc. The case was tried on the issue of not guilty, the jury returned a verdict of guilty, and thereupon the defendant moved the court to set aside the verdict upon the ground that it was contrary to the law and the evidence, and he also moved in arrest of judgment, both of which motions the Court overruled, and, having fixed his fine at $10.00, entered judgment against him for that sum, and the costs. At the instance of the defendant, the court certified all the facts proved on the trial, and the defendant obtained this writ of error.

---

\*On account of illness.

The indictment, it seems to me, is clearly good, and therefore the only question about which there can be any controversy in this Court is whether or not the facts certified are sufficient to sustain the verdict of the jury.

The material facts proved are as follows: The defendant is a son of the proprietor of the tavern known as the " Brast House," in the town of New Martinsville, in Wetzel county, and occupied a room in the building connected with, and, to some extent, used as a part of said tavern, for the accommodation of guests; that the defendant took possession of this room in May, 1887, and used it as his own lodging-room, and boarded with his father at the tavern ; that he and his brother were engaged in the lumber business, and kept their books in said room, and both had keys and access to the room ; that the defendant kept the room locked when absent from it, and carried the key; that the servants of the house attended to the room for the defendant; that the building of which this room is part is about eight feet from the main tavern, and connected with it by a platform between the hall-doors of the second story ; that one of the doors of this room opened into other rooms of the annex, which were used for guests of the tavern, and there was another door which led down-stairs directly to the street; that in August, 1887, on Sunday, about 1 o'clock in the day, the prosecuting witness, in walking along the alley near the building heard loud talking in this room; that she was seeking for her husband, and found him in the room with the defendant and others engaged in a game of poker, and that money and poker chips were on the table ; that to prevent egress from the other rooms of the building to that of the defendant, a bed was placed across and against the door of the defendant's room, and said door was kept locked and bolted from the inside of the defendant's room ; and that this room is on the second story of the building.  These facts being proved, the question is, do they warrant a verdict of guilty under this indictment ?

The statute provides that if any person, " at any hotel or tavern, or other public place, or place of public resort, play at any game, except bowls, chess," etc., he shall be fined, etc.  Section 4, ch. 151, Code.  The indictment here is for

playing cards at a public place, and not for playing at an hotel or tavern. According to the statute, gaming at an hotel or tavern is an offence without any evidence or proof that it is a public place. All that is necessary, in such case, is to prove that the gaming was done at an hotel or tavern, and the offence is established. But it is very different in the case of an indictment for gaming in a public place. In such case it devolves upon the prosecution to prove, not only the place, but that it was a public place. Unless the gaming is done at an hotel or tavern or at a public place, the act does not constitute an offence under this provision of the statute ; and, unless it is proved that the gaming here charged was done at a public place, then, under this indictment, the defendant is not shown to be guilty of the offence charged, and can not be convicted.

The question as to what is a public place, within the meaning and purpose of statutes identical or similar in effect to the one under consideration, has been frequently passed upon by the courts of Virginia. In *Windsor's Case,* 4 Leigh 680, the court set aside the verdict and judgment of conviction under an indictment for unlawful gaming " at a public place, to-wit, at the store-house of G. Huddleston & Co.," because the proof was insufficient to establish that said store-house was a public place. In the opinion the court says : " To convict the defendant, it was incumbent on the Commonwealth to prove that the play occurred at the store of Huddleston & Co., and that it was a public place at the time of the playing. It was so alleged in the indictment. Proof that Huddleston & Co.'s house was a store-house at which goods were vended, would establish that it was a public place so long as it was kept open for that purpose. But when the business of the day was ended, the store-house was *bona fide* shut up, the doors closed, it ceased *prima facie* to be a public place ; and, in the absence of other proof, it would not be regarded as a public place, but as a private one."

In *Vandine's Case,* 6 Grat. 689, under an indictment for gaming at a public place, the jury found a special verdict as follows : " The county of Jackson owned a tract of about 80 acres of land for the purpose of maintaining the poor of the

county upon it. This land was leased to Humphreys. In the latter part of August, 1848, the land then being in the possession and under the control of Humphreys, a shooting-match was had on this land, at which all persons who chose to attend might have done so. About twenty persons were present; and, while the shooting was going on, the defendant with three others, left the shooting party, and went up a ravine about 200 yards from the place of shooting, to a place thickly surrounded with brush and briers, and then and there played at a game of cards called ' Bluff.' They could not be seen from the place of the shooting-match in consequence of the brush and briers, and also because the bank of the ravine was interposed. There were about ten persons, during the day, engaged in playing ; and in that time a few persons passed between the two places. It did not appear that Humphreys had authorized the parties to play at that place, or that any persons were excluded who chose to go there ; and the place at which the playing occurred had not been resorted to for the purpose of gaming, or for any other purpose, before that time." Upon these facts the General Court held that judgment should be entered for the defendant.

In *Feazle's Case*, 8 Grat. 585, it was held that " a store-house in a village, late at night, after persons cease to come to the store to purchase goods, and the door is locked, is not a public place within the meaning of the statute against gaming." In *Bishop's Case*, 13 Grat. 785, the defendant was indicted for playing cards at or near Old Shop meeting-house. Judge Lee, in delivering the opinion of the court, says : " The name of the place does not *ex vi termini* import that it was at all times a public place. Although while the public might be assembled there for religious worship or other purpose, or while so assembling, or afterwards dispersing, it might well be a public place, within the meaning of the statute, yet at all other times it might be strictly a private place, the playing at which would not be a violation of law.

In *Purcell's Case*, 14 Grat. 679, the court held that " a room in an out-house within the inclosure of a tavern lot, which had at one time been used in connection with the tavern, and the room over which is still so used, having been

rented by a third party, and held, used, and controlled by him independent of the proprietor of the tavern, though the occupier boarded at the tavern, and the servants belonging to it attended to the room, is not a part of the ordinary, nor is it a public place, in the sense of the act, Code Va., ch. 198, § 4."

The general principle to be deduced from these cases seems to be that the place at which the gaming occurs must be public at the time the playing takes place. It must be a place to which people are at the time privileged to resort without an invitation. There must also be a publicity about it, for this statute is not intended to reach concealed gambling in a private place. There are other provisions of the statute made for the punishment of such cases. The provision is not intended to suppress gambling as a vice *per se*, but to prevent it from becoming an annoyance and a nuisance to the public, or persons not participating in it. Bish. St. Cr. § 298.

Applying this principle to the facts in this case, I am of opinion that the verdict of the jury is plainly unwarranted by the facts proved, and that the Circuit Court erred in not setting it aside. The judgment of said court is therefore reversed, the verdict set aside, and a new trial awarded.

REVERSED.  REMANDED.